Case 07-01087    Filed 11/26/08    Doc 138

POSTED ON WEBSITE

NOT FOR PUBLICATION

FILED

NOV 26 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re<br><br>John Menezes and<br>Linda Menezes,<br><br>        Debtors. | Case No. 07-10271-B-12 |
| Land O'Lakes, Inc., and<br>Land O'Lakes Finance<br>Company,<br><br>        Plaintiffs,<br><br>   v.<br><br>John Menezes and<br>Linda Menezes,<br><br>        Defendants. | Adversary Proc. No. 07-1087<br><br>DC No. DLF-1 |
| John Menezes and<br>Linda Menezes,<br><br>        Third-Party Plaintiffs,<br><br>   v.<br><br>Alvin L. Souza and Robyn G.<br>Souza, individually and dba<br>Alvin Souza Dairy, Frank Garcia,<br>Jr., an individual,<br><br>        Third-Party Defendants. | |

**MEMORANDUM DECISION REGARDING MOTION TO
AMEND THIRD-PARTY COMPLAINT**

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.

Jacob L. Eaton, Esq., and Jonette M. Montgomery, Esq., appeared on behalf of third-party plaintiffs, debtors, John Menezes and Linda Menezes.

Joseph F. Soares, Esq., appeared on behalf of third-party defendants, Alvin L. Souza and Robyn G. Souza, individually and dba Alvin Souza Dairy.

John P. Bianco, Esq., appeared on behalf of third-party defendant, Frank Garcia, Jr.

Before the court is a motion (the "Motion") by the third-party plaintiffs, John and Linda Menezes ("Menezes") to amend their third-party complaint against third-party defendants, Alvin and Robyn Souza and Frank Garcia, Jr. (collectively "Respondents"). The third-party complaint (the "TPC") pleads one claim for indemnity. The Menezes seek to add two new claims for fraud and intentional infliction of emotional distress based on facts which were not previously pled in compliance with the Federal Rules of Civil Procedure. The proposed amendment also includes three claims for tortious injury to real and personal property which were not separately pled in the TPC, and which were not previously disclosed as assets of this bankruptcy estate. For the reasons set forth below, the Motion will be granted in part as to the conversion and trespass claims. The Motion will be denied as to the claims for fraud and emotional distress.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052. The court has jurisdiction over this matter under 28 U.S.C. § 1334 and 11 U.S.C. § 523[1] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

///
///

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

2

**BACKGROUND AND FINDINGS OF FACT.**

(1) **The Bankruptcy Proceeding:** The Menezes commenced this bankruptcy under chapter 12 on January 31, 2007. At that time, they owned and operated a dairy facility in Tulare, California, known as J & L Dairy. Their largest secured creditor was Land O'Lakes, Inc. ("LOL"), which held a first priority lien against, *inter alia*, all of the Menezes' dairy cattle.[2] Shortly after commencement of the case, the Menezes decided to close their dairy. LOL's collateral, including the cows, was sold and the proceeds turned over to LOL in partial satisfaction of its claim.

The Menezes' bankruptcy schedules stated that they owned real property (their residence) valued at $270,000, subject to a lien in the approximate amount of $205,000. The schedules disclosed personal property assets valued at $961,966, including 490 cows valued at $539,000 and 14 bulls valued at $10,500. Altogether, the schedules showed assets totaling $1.232 million and liabilities totaling $2.258 million. The Menezes exempted virtually all of their unencumbered assets.

The statement of financial affairs shows that the Menezes lost almost $1.5 million from operation of the J & L Dairy during the prior three years.[3] The schedules state that Alvin Souza Dairy had an undisputed unsecured claim in the amount of $233,090.58 for "cow purchases." However, the statement of financial affairs also shows that Alvin Souza Diary obtained 150 cows, valued at $195,000, within one year prior to commencement of the case through "repossession, foreclosure, return."

Most relevant to this Motion is the fact that the Menezes' bankruptcy schedules, the statement of financial affairs, and virtually the entire record of this case, are silent

---

[2] Land O'Lakes, Inc., and its affiliate, Land O'Lakes Finance Company, filed a proof of secured claim in the amount of $781,634.06. In addition to the dairy herd, the record shows that LOL also held a lien against the Menezes' milk checks, retains, feed inventory, growing crops and farm equipment.

[3] The statement of financial affairs reports a negative income of $555,127 in 2004, $563,048 in 2005, and $350,000 in 2006.

with regard to the tort claims which the Menezes now want to prosecute against the Respondents in this adversary proceeding.[4] Schedule B, question number 21 relating to personal property, states that the Menezes have no "[o]ther contingent and unliquidated claims of every nature including . . . counterclaims of the debtor, and rights of setoff . . . ." The Menezes omitted any reference to their claims against the Respondents in response to question number 35 on schedule B, which required them to itemize "[o]ther personal property of any kind not already listed."

On March 23, 2007, the Menezes filed a motion to sell virtually all of their non-exempt assets, including the dairy herd, milk checks, retains, feed and supply inventory, growing crops and farm equipment. The proceeds were applied to pay those creditors holding various liens against the assets with a small "carve out" (not to exceed $35,000) for the bankruptcy estate. The motion was based on the Menezes' decision to "downsize the Estate's operations."[5] It is clear from that motion that the Menezes were not in a position to reorganize based on continued operation of their dairy. That motion makes no reference to the Respondents as being a cause of the Menezes' financial difficulties or having any responsibility for the decision to "downsize." The motion to sell assets was granted on April 27, 2007.

On May 15, 2007, the Menezes' bankruptcy attorney, Riley C. Walter, Esq., filed an application for approval and payment of interim fees and expenses. In that application, Mr. Walter attributed the Menezes' decision to liquidate assets and cease operating their dairy to problems with the dairy cattle:[6]

///

---

[4]The schedules list an "uncollectible" judgment against Joe Garcia in the amount of $824.30, which appears to bear no relationship to this adversary proceeding.

[5]Declaration of John Menezes filed March 23, 2007.

[6]See Exhibit "A" - Narrative Summary filed in support of Application for Payment of Interim Fees and/or Expenses filed on May 15, 2007.

4

> During the course of the case the Debtors altered courses on several occasions. Initially they intended to liquidate. They then attempted to reorganize. *They then found that the dairy herd suffered from heretofore-unknown diseases and decided to go forward with a liquidation.* (emphasis added.)

On August 13, 2007, the Menezes filed their chapter 12 plan. The original plan was subsequently modified twice and a "restated" plan was filed after the confirmation hearing to incorporate the modifications into one document (the "Plan").[7] The Plan provides that general unsecured creditors will receive a total distribution of $6,000 (at the rate of $100 per month) in full satisfaction of claims estimated to exceed $1 million (see Plan, Class 12). The Plan makes a brief reference to this adversary proceeding and discloses only the Menezes' intent to recover for "conversion of Debtors' cattle" through this litigation. The TPC is discussed in the section entitled "Means For Executing The Plan" in pertinent part as follows:

> 4.03. Debtors have filed a Third Party Complaint against Alvin and Robyn Souza and Frank Garcia, Jr. ("the Third Party Defendants") in connection with an adversary proceeding filed against them by Land O'Lakes. The Third Party Complaint seeks the recovery of cattle wrongfully removed from the Dairy Facility by the Third Party Defendants. *Any recovery from the Third Party Defendants for conversion of Debtors' cattle will be paid to Land O'Lakes to reduce the Class 3 claim. Any recovery for conversion of Debtors' cattle in excess of the amount needed to satisfy the Class 3 claim shall be paid to the Trustee for administration in Debtor's case.* Any recovery against the Third Party Defendants for personal injury to Debtors such as pain and suffering, emotional distress, and the like will be retained by Debtors as exempt property under California Code of Civil Procedure Section 104.140(b). (emphasis added.)

In support of confirmation of the Plan, John Menezes filed a declaration which states: "My wife and I do not have the money to continue the operation of our dairy and repay the debts owed to our creditors."[8] Again, John Menezes' declaration is silent with

---

[7]The Menezes requested several extensions of time to file their plan after the assets had been sold and the dairy operations closed.

[8]Declaration of John Menezes in Support of Confirmation of Chapter 12 Plan filed on August 13, 2007.

5

regard to any expectation of recovering money from the Respondents. The income and expense projection attached as an exhibit to the Plan shows that the Menezes will have an income of $6,858 per month based on wages, rent from a sublease of the dairy, and social security. Of that money, the Debtors commit to pay $2,400 per month to the chapter 12 trustee to fund the Plan. The Plan was confirmed on October 15, 2007.

**(2) The Adversary Proceeding:** On May 21, 2007, LOL filed this adversary proceeding against the Menezes seeking a determination as to the dischargeability of LOL's unsecured claim - the deficiency remaining on LOL's loan after all of the available dairy cattle were sold. LOL contends that the Menezes' misappropriated and converted its collateral by allowing Respondents to remove and dispose of approximately 212 cows from the dairy facility shortly before the bankruptcy was filed.[9] LOL prays for damages equal to the full amount of its outstanding promissory notes, plus interest, costs, and attorneys' fees "to be reduced by [LOL's] collateral recoveries, if any."

On July 12, 2007, Menezes filed an answer to the complaint denying any liability to LOL. The Menezes also filed the TPC against the Respondents seeking indemnity and unspecified damages "according to proof." The TPC alleges that Respondents entered the dairy facility without Menezes' permission and wrongfully removed the 212 cows on or about January 30, 2007, one day before the bankruptcy was filed. The pertinent factual allegations stated in the TPC and the prayer for relief are set forth below:

### III.

### FACTUAL ALLEGATIONS

> 9. At all relevant times herein, Debtors owned and operated a dairy farm located at 20385 Road 36, Tulare, California 93274. In January 2007, Debtors owned approximately 600 dairy cows.
>
> 10. At all relevant times herein, Souza owned and operated a business wherein it sold dairy cows to Debtors. On or about January 3, 2007, Debtors owed Souza approximately

---

[9] On February 25, 2008, after considerable discovery, LOL amended its complaint to include a direct claim against Respondents for conversion of its collateral.

6

$412,932.11 for the purchase of various dairy cows. It is important to note that Souza never had a security interest in the dairy cows purchased, and the debt owed by Debtors to Souza was completely unsecured. . . .

11. On or about January 29, 2007, at a meeting between Debtors, Souza, and Garcia, Souza presented to Debtors a document entitled Agreement, which purported to memorialize a preexisting boarding arrangement between the Debtors and Souza, whereby Debtors agreed to "feed, house, care for and board [Souza's] Livestock" - consisting of approximately 175-200 dairy cows owned by Souza - in exchange for which the Debtors were "entitled to retain all [milk] production from the Livestock" (the "Agreement"). Agreement, ¶3. The Agreement further provided that Debtors and Souza were entitled to remove all Livestock owned by Souza from Debtors' dairy facility. Agreement ¶4. . . .

12. At the meeting, the Debtors informed Souza and Garcia that Debtors owned all dairy cows at their dairy facility, and there was no preexisting boarding arrangement between Debtors and Souza as contemplated in the Agreement. For such reasons, Debtors refused to execute the Agreement, and vehemently opposed the removal of any dairy cows from their facility by Souza. . . .

13. Despite Debtors' refusal to sign the Agreement, and without the prior knowledge or permission of Debtors, on or about January 30, 2007, Souza and Garcia entered Debtors' dairy facility during the late hours of the night, and unlawfully removed approximately 200 milking dairy cows owned by Debtors. During the very next morning, Debtors found Garcia erasing records of the dairy cows that were removed the previous night on their office computer at their dairy facility. Garcia unlawfully entered Debtors' office and accessed their computer and dairy records without Debtors' prior knowledge or permission. To date, Debtors have been unable to recover some of the computer data that was erased by Garcia that morning.

14. . . . Souza and Garcia transported Debtors' cows to Souza's dairy facility, and soon thereafter sold them for profit. To date, neither Debtors nor Plaintiff received any proceeds from the sale of Debtors' dairy cows.

15. In doing the acts alleged herein, . . . Souza and Garcia each acted deliberately and with the malicious intention to unlawfully remove and convert Debtors' dairy cows for Souza's own improper financial gain to satisfy Debtors' unsecured debt owed to Souza, in utter disregard of the respective rights of both Debtors and Plaintiff under the law. Souza and Garcia made a conscious decision that they would not comply with the laws of the State of California, and said conduct is unacceptable in a civilized society and goes beyond the bounds of common decency. . . .

16. . . . Souza and Garcia each acted deliberately for the purposes of injuring Plaintiff and Debtors financially. In particular, Souza and Garcia each engaged in an intentional course of conduct to unlawfully remove and convert Plaintiff's collateral, and to financially destroy Debtors' dairy operation. Souza and Garcia further acted intentionally and unreasonably because each of them knew or should have known that the removal of approximately 200 dairy cows would be financially devastating to the Debtors' operation, and cause Debtors to be liable to Plaintiff for the missing collateral under their loan obligations. The conduct by Souza and Garcia was unlawful, despicable, cruel and oppressive, and as a result of the aforementioned acts alleged herein, Debtors have suffered, and continue to suffer, *inter alia*, loss of sale proceeds from milk and cattle, plus interest, and have incurred expenses, attorneys' fees and costs in an amount to be proven at the time of trial.

17. The Complaint filed by Plaintiff against the Debtors alleges, *inter alia*, Debtors fraudulently appropriated and converted Plaintiff's collateral by wrongfully permitting Souza to remove dairy cows from the Debtor's facility. These claims are made based on the fact that Plaintiff had a security interest in the dairy cows unlawfully removed by Souza and Garcia. Souza and Garcia are liable to Debtors for any and all of Plaintiff's claims against them, and for their damages incurred as a result of the unlawful conduct. To the extent that Plaintiff's claims are excepted from discharge in their bankruptcy case pursuant to 11 U.S.C. §523(a)(4) and (6) as prayed for in the Complaint, Souza and Garcia are liable to Debtors and is [sic] obligated to indemnify and hold them harmless from any and all liability, damages, expenses, attorneys' fees, costs, judgment, and/or award that may be recovered against Debtors as a result of the claims asserted by Plaintiff in the Complaint on file in the instant adversary proceeding. In the event that Debtors recover any and all sums from Souza and Garcia for the benefit of Plaintiff, Debtors and the undersigned are entitled and seek reimbursement of all attorneys' fees and costs pursuant to 11 U.S.C. §506(c). In addition, Debtors are entitled and seek damages for the unlawful conduct of both Souza and Garcia, plus interest, attorneys' fees and costs in an amount to be proven at the time of trial

. . .

## V.

## PRAYER FOR RELIEF

WHEREFORE, Debtors pray for judgment against Souza and Garcia for any and all exceptions from discharge in their bankruptcy case, all sums that may be adjudged against Debtors in favor of Plaintiffs under the Complaint filed by Plaintiff against Debtors, and all damages suffered by Debtors

8

> as a result of the unlawful conduct of Souza and Garcia, as well as any and all attorneys' fees and costs of said action incurred herein, and for such other and further relief as the court may deem just and proper.

Over the next year, the parties engaged in extensive discovery. Eighteen depositions were taken, including the depositions of John and Linda Menezes. The court scheduled seven status conferences to monitor the progress of discovery and trial preparation. Finally, on May 16, 2008, this court issued a scheduling order, with all parties' consent, which fixed the following dates: June 27, 2008 was fixed as the last day to complete discovery and July 10, 2008, was set as the time for final pre-trial conference. All parties were ordered to file a final pre-trial statement which sets forth a summary of their case with a list of witnesses and evidence to be introduced at trial (the "Final Pre-trial Statements").

The Menezes filed their Final Pre-trial Statement on July 3, 2008. It was 65 pages long and contained an extensive discussion of personal injury and property damage claims against Respondents based on theories of conversion, trespass to land and chattels, fraud, and intentional infliction of emotional distress. The Menezes identified 13 witnesses to be called at trial, including two experts. Both of the experts were designated to testify regarding the condition and value of the cows. At the final pre-trial conference, the court questioned whether the claims stated in Menezes' Final Pre-trial Statement had been properly pled in the TPC. The Menezes argued that the personal injury and damage claims were included within the TPC's general factual allegations and in the prayer for relief which requested compensation for "all damages suffered" as a result of Respondents' alleged "unlawful conduct." There was a discussion whether the Menezes would be allowed to prosecute some or all of the claims listed in the Final Pre-trial Statement at trial. The court directed the Menezes to file the Motion which is presently

before the court so that issue could be resolved prior to trial.[10]

(3) **The Motion to Amend the TPC:** The Menezes filed this Motion along with a proposed amended third-party complaint. The Menezes now want to plead and prosecute five separate claims for relief. The first two claims are for conversion of the cows and trespass to chattels. They seek damages measured by the value of the cows, economic losses to the dairy resulting from removal of the cows, and indemnity for Menezes' liability to LOL. The third claim is pled as trespass to land. It seeks recovery for physical damage to the dairy facility and indemnity for Menezes' liability to LOL. The conversion and trespass claims are pled as a basis for recovery of compensatory and punitive damages "according to proof at trial." They are also pled as a basis for indemnity against LOL which was already pled in the TPC. In that regard, the amended third-party complaint is unnecessary because the original TPC requests indemnity on virtually the same facts.

The amended third-party complaint also adds a claim for fraud based on alleged representations and actions related to the purported agreement referenced to paragraphs 11 through 13 of the TPC, an agreement to permit removal of the cows. The fifth claim for relief in the amended pleading is based on alleged emotional distress suffered by the Menezes as a result of all the other acts pled in the previous claims. The Menezes allege that the Respondents' conduct was willful, malicious and oppressive, and that they acted with the intent to inflict pain, suffering, humiliation, anxiety and emotional distress on the Menezes.

/ / /
/ / /
/ / /

---

[10]At the final pre-trial conference, the court also bifurcated the issue of ownership of the cattle (the Souzas contend that they actually owned the cows that were removed from the Menezes' dairy). The court set a date of October 10, 2008, for trial to begin on the bifurcated issue.

## ANALYSIS AND CONCLUSIONS OF LAW.

**(1) Pleading a Claim Under the Federal Rules of Civil Procedure:** The Menezes argued at the final pre-trial conference that they did not need to amend the TPC. They contend that all five of the claims now stated in the amended document were properly pled and included in the TPC and in its prayer for relief. Paradoxically, they also argue that the proposed amended claims are based on "newly discovered evidence."[11]

Federal Rule of Civil Procedure 8(a) (made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7008), proscribes the general standard for pleading a claim for relief:

> A pleading that states a claim for relief must contain:
>
> . . .
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

In a bankruptcy context, Rule 8(a) is applied liberally. *Markus v. Gschwend (In re Markus)*, 313 F.3d 1146, 1149 (9th Cir. 2002) The court must look to the prior pleading to see if it gives the responding party "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id,* (citing *Dominguez v. Miller (In re Dominguez)*, 51 F.3d 1502, 1508 (9th Cir. 1995).

A claim for fraud must be pled with particularity pursuant to Fed.R.Civ.P. 9(b) (made applicable to this adversary proceeding by Fed.R.Bankr.P. 7009) which states:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Thus, the dispositive question is whether the factual allegations in the TPC put the

---

[11] At oral argument on the Motion, when asked by the court, Menezes' counsel was unable to articulate what specific factual allegations in the amended third-party complaint were "newly discovered" such that they could not have been raised before the conclusion of discovery.

11

1　Respondents on notice that the Menezes intended to, and were entitled to seek any relief
2　in the TPC other than indemnity against the Menezes' potential liability to LOL. The
3　court is not so persuaded for two reasons. First, the prayer for relief in the TPC,
4　requesting generally "all damages suffered" as a result of Respondents' "unlawful
5　conduct" may be disregarded and forms no part of the substantive complaint. *Schoonover*
6　*v. Schoonover*, 172 F.2d 526, 530 (10th Cir. 1949).

7　　Second, the TPC does not set forth a short and plain statement of any of the five
8　separate claims which the Menezes now wish to pursue. All of the factual allegations in
9　the TPC relating to entry of the dairy and removal of the cows are merged into one
10　general claim for unspecified damages and indemnity against loss of LOL's collateral -
11　the cows and milk checks. The TPC is silent with regard to the fraud and emotional
12　distress claims. When the court determines that a particular claim is not pled in
13　compliance with Rules 8(a) and 9(b), then the plaintiff's burden is to amend the
14　complaint.

15　　**(2) Amendment Pursuant to Rule 15:** A party's right to amend a pleading is
16　governed by Fed.R.Civ.P. 15 (made applicable to this adversary proceeding by
17　Fed.R.Bankr.P. 7015). Rule 15 provides in pertinent part: "[A] party may amend the
18　party's pleading only by leave of court or by written consent of the adverse party; and
19　leave shall be freely given when justice so requires."

20　　Rule 15 allows liberal amendment of pleadings. Federal policy strongly favors
21　determinations on their merits. Thus, the role of pleadings is limited; and leave to amend
22　the pleadings is freely given unless the opposing party makes a showing of undue
23　prejudice, or bad faith or dilatory motive on the part of the moving party. *Foman v.*
24　*Davis*, 371 U.S. 178, 182, 83 S.Ct. 227 (1962). Amendment to the pleadings must be
25　allowed where the objecting party suffers no prejudice as a result of the amendment and
26　would not require the objecting party to undertake an entirely new course of defense or
27　conduct substantial additional discovery. *United States v. Pend Orielle Public Utility*
28　*Dist. No. 1*, 28 F.3d 1544, 1552-53 (9th Cir. 1994).

Pursuant to Rule 15(c)(1)(B), a newly pled claim will relate back to the original pleading if "the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out - or attempted to be set out - in the original pleading." That test is satisfied when "the claim to be added will likely be proved by the 'same kind of evidence' offered in support of the original pleadings.'" *In re Magno*, supra, 216 B.R. at 39 (citations omitted).

> In determining whether an amended cause of action is to relate back, the emphasis is not on the legal theory of the action, but whether the specified conduct of the defendant, upon which the plaintiff is relying to enforce his amended claim, is identifiable with the original claim. The basic test is whether the evidence with respect to the second set of allegations could have been introduced under the original complaint, liberally construed; or as a corollary, that in terms of notice, one may fairly perceive some identification or relationship between what was pleaded in th original and amended complaints.

*In re Dean*, 11 B.R. 542 (9th Cir. BAP 1981), *aff'd*, 687 F.2d 307 (9th Cir. 1982).

In exercising its discretion to allow, or disallow, the amendment of a pleading, the bankruptcy court "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Magno v. Rigsby (In re Magno)*, 216 B.R.34, 38 (9th Cir. BAP 1997) (citations omitted). There are four factors which the court must consider in determining whether to grant Menezes' Motion: (1) undue delay, (2) bad faith, (3) futility of the amendment, and (4) prejudice to the opposing party. *Id.* The Menezes seek to add five different kinds of claims to this litigation (in addition to their indemnity claim), and the court must consider each claim separately in light of the above factors.

**The Emotional Distress Claim.** The emotional distress claim was not pled in the TPC. Prosecution and defense of an emotional distress claim will require substantially new and different evidence, including evidence of the Menezes' physical and emotional health prior to the bankruptcy. As such, the emotional distress claim would not relate back to the TPC and must be considered as a totally new claim for relief.

Respondents argue that the emotional distress claim is untimely and highly prejudicial to the Respondents. The court agrees. The Respondents should not be forced

to defend the emotional distress claim, with the prayer for punitive damages, without, *inter alia*, an opportunity to conduct further discovery and have the Menezes examined by a medical expert. The Menezes did not designate an expert witness in their Final Pre-trial Statement to testify with regard to the emotional distress claim, and they make no showing that any evidence relating to emotional distress was ever produced during discovery.

**The Fraud Claim.** The fraud claim was not pled clearly, plainly, or with particularity in the TPC. Indeed, none of the traditional elements of fraud, false representation, intent to deceive, or reliance, are even mentioned in the TPC. The fraud claim would not relate back to the TPC. Like the emotional distress claim, it would be highly prejudicial to force the Respondents to defend against a fraud claim without the opportunity for more discovery. The alleged fraud relates to events which occurred on or about January 29, 2007, when the parties met to discuss the purported "boarding agreement." (TPC at paragraphs 11 and 12.) The Menezes make no showing that any of the "fraud" facts were "newly discovered." As such, the fraud claim is unlikely.

**The Conversion and Trespass Claims.** The conversion and trespass claims require a different kind of analysis. Reasonable minds could argue that the underlying facts for each claim, conversion, trespass to chattels, and trespass to land are already pled within paragraphs 13 through 16 of the TPC. The TPC clearly states a claim for indemnity. The amount of indemnity will be measured by the value of LOL's lost collateral and any judgment which may be entered in favor of LOL. Economic losses to the dairy, such as reduced milk checks, would be part of LOL's collateral and presumably will be merged into the indemnity claim. However, the Menezes are seeking two kinds of relief for each of those claims; indemnity against LOL which is already pled in the TPC, and some unspecified amount of compensatory and punitive damages for "financial destruction" of the dairy operation.

The biggest problem here is one of futility. To the extent that the Menezes intend to recover damages for "financial destruction" of the dairy, then those claims relate to

damage to the bankruptcy estate. Any claims for damages to the bankruptcy estate would have been assets of the bankruptcy estate. Nowhere are those claims disclosed in the record as summarized above. As such, they are referred to in bankruptcy as "omitted assets." They are not exemptible by the Menezes. Only the conversion claim is even referred to vaguely in the Menezes' Plan.

The inclusion of claims for damages to the bankruptcy estate would be a futile amendment because those claims would be barred by judicial estoppel. *Diamond Z Trailer, Inc. v. JZ L.L.C. (In re JZ L.L.C.)*, 371 B.R. 412 (9th Cir. BAP 2007). This principle was explained in *JZ L.L.C.* as follows:

> Judicial estoppel is a flexible equitable doctrine based on the estoppel of inconsistent positions in which a litigant who has obtained one advantage through the court by taking a particular position is not thereafter permitted to obtain a different and inconsistent advantage by taking a different position.
>
> In the case of omitted assets in bankruptcy, the initial position is that there is no asset, the later inconsistent position is that there is an asset. The debtor need only have gained some advantage through the court's acceptance of the initial position, such as plan confirmation or grant of discharge. Since the existence of assets and their value is integral to plan confirmation, the implied representation that an asset does not exist (i.e., the omitted asset) or is of low value (i.e., the materially undervalued asset) may be sufficiently material that the court cannot in good conscience permit the debtor to take a contrary position in subsequent litigation.

*Id.* at 420-21 (citations omitted).

The Menezes got a significant advantage by not disclosing any affirmative damage claims early in this case. Further, the record does not even show that removal of the cows did cause "financial destruction" of the dairy. When the Menezes had all of their cows, the dairy was operating with significant losses; more than $500,000 per year. The Menezes' attorney stated in his fee application that the dairy could not reorganize because the cows had serious health issues. The Menezes took the position in support of confirmation that they did not have any income or other assets to pay anything to unsecured creditors. John Menezes' declaration filed in support of confirmation of the Plan says nothing about recovery from damage claims that could have benefitted

15

unsecured creditors. Even the Plan, which makes a brief reference to the TPC, does not commit any proceeds of this litigation to the unsecured creditors, it only commits hypothetical proceeds "for administration in Debtor's case."

Based thereon, the Menezes got the advantage of confirming a chapter 12 plan which provides almost nothing to their unsecured creditors; $6,000 (payable at the rate of $100 per month) in full satisfaction of unsecured claims estimated to exceed $1 million. From this, the court can infer that the Menezes either viewed the "financial destruction" claims as *de minimis* - not worthy of pursuit - or they were trying to get the Plan confirmed without disclosing the true value of those claims. Either way, it would be inappropriate to now allow the Menezes to assert significant new claims based on "financial destruction" of the dairy more than one year after confirmation of their Plan, and after discovery has been concluded in the adversary proceeding.

**CONCLUSION.**

Based on the foregoing, the court finds and concludes that the proposed fraud and emotional distress claims stated in the amended TPC were not properly pled in the original TPC in compliance with Rules 8(a) and 9(b). These claims do not relate back to the TPC and the Menezes attempt to add these new claims to the adversary proceeding at this time is both untimely and prejudicial to the Respondents. The Menezes' motion to amend the third-party complaint with regard to the fraud and emotional distress claims will be denied.

Further, the Menezes' conversion, trespass to land, and trespass to chattel claims appear to simply restate the indemnity claim pled in the TPC, but they are barred by judicial estoppel to the extent that they seek relief other than indemnity for the loss of LOL's collateral. If the Menezes were entitled to recover anything based on property damage to, or "financial destruction" of the dairy, they failed to timely disclose those claims as assets of the bankruptcy estate and provide for distribution of the proceeds to their unsecured creditors.

///

The motion will be granted with regard to the first three claims for relief in the amended third-party complaint, the conversion and trespass claims, provided that relief will be limited to indemnity for the Menezes' liability to LOL, if any. The newly added claims for relief will be deemed denied by the Respondents and no further responsive pleading will be required.

Dated: November 26, 2008

W. Richard Lee
United States Bankruptcy Judge