

FILED

FEB 1 9 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 07-10271-B-12 |
| John Menezes and Linda Menezes, | |
| Debtors. | |
| Land O'Lakes, Inc., and Land O'Lakes Finance Company, | Adversary Proc. No. 07-1087 |
| | DC No. DLF-1 |
| Plaintiffs, | |
| v. | |
| John Menezes and Linda Menezes, | **MEMORANDUM DECISION REGARDING MOTIONS FOR JUDGMENT** |
| Defendants. | |
| John Menezes and Linda Menezes, | |
| Third-Party Plaintiffs, | |
| v. | |
| Alvin L. Souza and Robyn G. Souza, individually and dba Alvin Souza Dairy, Frank Garcia, Jr., an individual, | |
| Third-Party Defendants. | |

1  Land O'Lakes, Inc., and                    )
   Land O'Lakes Finance Company,              )
2                                             )
                Plaintiffs,                   )
3                                             )
         v.                                   )
4                                             )
   Alvin L. Souza and Robyn G.                )
5  Souza, individually and dba                )
   Alvin Souza Dairy,                         )
6                                             )
                Third-Party Defendants.       )
7  _____)

8
   This disposition is not appropriate for publication.  Although it may be cited for
9  whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential
   value.  See 9th Cir. BAP Rule 8013-1.
10
   Jonette M. Montgomery, Esq., of the Dias Law Firm, appeared on behalf of defendants
11 and third-party plaintiffs, John and Linda Menezes.

12 Joseph F. Soares, Esq., of Horswill, Mederos & Soares, appeared on behalf of third-
   party defendants, Alvin and Robyn Souza.
13
   John P. Bianco, Esq., of the Bianco Law Firm, appeared telephonically on behalf of
14 third-party defendant, Frank Garcia, Jr.

15         Before the court are two opposing motions for entry of judgment filed by the

16 defendants and third-party plaintiffs John and Linda Menezes (the "Menezes") and by

17 the third-party defendants Alvin and Robyn Souza (the "Souzas") and Frank Garcia, Jr.

18 ("Garcia") (collectively, the "Third-Party Defendants").  After a two-day bifurcated

19 trial, the principal case was settled and dismissed.  The Menezes have no further

20 liability as a result of the claims initially filed against them in this adversary proceeding.

21 They now seek a judgment against the Third-Party Defendants for the attorney's fees, in

22 excess of $150,000, which they have incurred in connection with this adversary

23 proceeding.[1]  Because the Menezes failed to perfect their right to recover attorney's fees

24

25 _____

26     [1]Allowance of Menezes' attorney's fees is not before the court in this proceeding.  The
   court has not yet determined that all of the Menezes' attorney's fees are allowable as reasonable
27 and necessary to their defense of the principal case.  The court is only deciding here whether the
   Menezes may recover any of their attorney's fees from the Third-Party Defendants under
28 applicable law.

by giving timely notice and demand of their indemnity claim in compliance with Cal.C.C.P. § 1021.6, and because they have not shown that they are entitled to recover their attorney's fees under any other provision of law, their motion for judgment will be denied. The Third-Party Defendants' motion for judgment will be granted and the third-party complaint will be dismissed.

This memorandum decision contains the findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a) (made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052). The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 523[2] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (I).

**Background and Findings of Fact.**

**The Adversary Proceeding.** This adversary proceeding began as a complaint to determine the dischargeability of the Menezes' obligation to plaintiffs Land O'Lakes, Inc., and Land O'Lakes Finance Company ("LOL"). On November 26, 2008, this court issued a memorandum decision on the Menezes' motion to amend their third-party complaint to add various fraud, personal injury, and property damage claims. On July 9, 2008, in preparation for the final pre-trial conference, the parties filed a stipulation setting forth a list of undisputed facts. On March 24, 2009, this court made findings of fact and conclusions of law in a memorandum decision issued after a two-day trial on bifurcated issues (the "Bifurcated Trial"). A more complete background of this case is summarized in those documents. Only the most pertinent facts relevant to these

applicable law.

[2]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

3

1   motions will be repeated here. The following facts are supported by testimony and

2   evidence introduced at the Bifurcated Trial and by the record of this bankruptcy case.

3   The only unresolved issue before the court is the Menezes' right to recover their

4   attorney's fees from the Third-Party Defendants. That issue appears to be a question of

5   law.

6       Prior to commencement of this chapter 12 bankruptcy in January 2007, the

7   Menezes owned and operated the J & L Dairy in Tulare, California, with a herd of

8   approximately 700 cows. The Menezes owed a substantial amount of money to LOL

9   and LOL held a security interest in, *inter alia*, all of the Menezes' dairy cows. The

10  Souzas owned and operated the Alvin Souza Dairy, also in Tulare, and were in the

11  business of buying and selling dairy cows. The Menezes had purchased many of their

12  cows from the Souzas and the Menezes and Souzas were personal friends. Prior to

13  commencement of the bankruptcy, the Souzas carried an unsecured open account for the

14  Menezes with a balance due in excess of $400,000. Garcia was an employee of the

15  Souzas.

16      In the late hours of January 30, 2007, one day before the Menezes commenced

17  this bankruptcy case, Alvin Souza ("Alvin") entered the J & L Dairy with several

18  employees and a fleet of trucks and transported between 139 and 212 cows from the

19  facility (the "Removed Cows" or "Cows"). The Menezes lived away from the dairy

20  facility and were not there at the time. One unresolved and highly contentious issue in

21  this adversary proceeding is the question of whether the Cows were removed with the

22  Menezes' consent.[3]

23

24      [3]Sometime shortly before the Cows were taken, there was a meeting at the Menezes'
25  attorney's office to discuss pre-bankruptcy issues. John Menezes and Alvin Souza were at that
    meeting. John was very concerned about the fact that Alvin was an unsecured creditor. They
26  were the "best of friends" and John did not want Alvin to "get rooked" by the impending
    bankruptcy. (Trial Tr. 26:6-13.) There was some discussion about an arrangement wherein
27  Alvin would remove the Cows he had sold to the Menezes. There is a dispute as to whether the
28  agreement was ever formalized and the Menezes contend that they never consented to let Alvin

4

1    The Removed Cows were first taken to the Souza's dairy for a period of time,

2    but were subsequently sold by the Souzas.  The next morning, when John Menezes

3    ("John") discovered that the Removed Cows were gone, he knew immediately that

4    Alvin had taken them.  However, the Menezes took no formal action, before or during

5    the bankruptcy, to seek recovery of the Removed Cows or to enjoin their disposition.[4]

6    After taking the Cows, the Souzas issued a credit to the Menezes' account for $210,000.

7    The credit was reflected in the Menezes' bankruptcy schedules.  The Souzas were

8    scheduled as unsecured creditors with a claim in the amount of $233,090.[5]

9        Shortly after commencement of the bankruptcy, the Menezes decided to close the

10   J & L Dairy.  LOL's collateral, including the remaining dairy herd, was sold and the

11   proceeds were turned over to LOL.  Those proceeds were not sufficient to pay the full

12   debt to LOL.  In May 2007, LOL filed this adversary proceeding against the Menezes

13   seeking a determination as to the dischargeability of the unsecured portion of its claim –

14   the deficiency balance owing to LOL based on loss of the Removed Cows.  LOL

---

16   remove any Cows.

18   [4]During the Bifurcated Trial, the testimony of John Menezes was unequivocal.  The morning after the Removed Cows were taken, John knew that Alvin Souza had taken them.

19   Within a short time, he was able to determine which cows had been taken. (Trial Tr. 18-20; 29-31; 50-52, October 10, 2008.)  John expected Alvin to return the cows after the bankruptcy was

20   filed. (Trial Tr. 52:11-14; 54:21-22.)  A few days later, he called Alvin on the telephone to inquire about the cows. (Trial Tr, 60:19-24, 61:1.)  Very soon thereafter, John realized that he

21   was not going to get them back. (Trial Tr, 82:1-13.)  John waited several months before confronting Alvin about the Removed Cows.  On March 22, 2007, nearly three months after the

22   incident, John wrote a letter to Alvin protesting the removal of cows, but he did not demand

23   either their return or compensation for their value. (Trial Tr. 21:2-16; 80-81; Souza's Ex. 3D.) John filed a police report for "grand theft of cattle" on July 25, 2007, approximately six months

24   after the cows were taken, more than nine weeks after LOL filed this adversary proceeding

25   against him, and almost two weeks after he filed a third-party complaint against the Souzas for indemnity of LOL's claims. (Souza's Ex. 3F.)

26

27   [5]The removal of Cows was also reflected in the Menezes' statement of financial affairs

28   under "Repossession , Foreclosures and Returns" (question #5) as a transfer of 150 cows valued at $195,000.

5

contended, *inter alia*, that the Menezes acted in concert with the Souzas to convert the Removed Cows.  The Menezes countered that the Souzas and Garcia took the Removed Cows without the Menezes' permission.

**The Third-Party Complaints.**  In July 2007, the Menezes filed an answer to LOL's complaint denying any liability.  On the same day, the Menezes also filed a third-party complaint (the "TPC") against the Third-Party Defendants seeking indemnity for any liability to LOL based on the torts of conversion and trespass to land and chattels.  The TPC alleged that Alvin and Garcia entered the J & L Dairy without the Menezes' permission and wrongfully took the Removed Cows.[6]  In response, the Souzas alleged that the Removed Cows were taken with the Menezes' consent as part of the pre-bankruptcy planning.  (see footnote 3 supra.)  The Souzas also contended that they had retained ownership of the Removed Cows, that the Cows never belonged to the Menezes, and that the Cows were not part of LOL's collateral in the first place.

In August 2007, the Menezes filed a motion to employ the Dias Law Firm ("Dias") to represent them as special counsel in connection with the complaint filed by LOL and the TPC which had already been filed by the Menezes.  The Menezes first engaged the services of Dias on May 30, 2007, and entered into a Legal Services

---

[6]The relief sought in the TPC is summarized in paragraph 17 of that pleading as follows:

> Souza and Garcia are liable to Debtors for any and all of [LOL's] claims against them, and for their damages incurred as a result of the unlawful conduct.  To the extent that [LOL's] claims are excepted from discharge in their bankruptcy case pursuant to 11 U.S.C. §523(a)(4) and (6) as prayed for in the Complaint, Souza and Garcia are liable to [Menezes] and is [sic] obligated to indemnify and hold them harmless from any and all liability, damages, expenses, attorneys' fees, costs, judgment, and/or award that may be recovered against [Menezes] as a result of the claims asserted by [LOL] in the Complaint on file in the instant adversary proceeding.  (Third-Party Complaint, 6:11-18.)

1  Agreement with Dias on June 4, 2007.[7]  That motion was granted in October 2007.

2      During the year following the filing of the adversary proceeding the parties

3  engaged in extensive discovery.  Eighteen depositions were taken, including the

4  depositions of John and Linda Menezes.  The court scheduled seven status conferences

5  to monitor the progress of discovery and trial preparation.  In February 2008, after

6  considerable discovery, LOL filed its own third-party complaint to include a conversion

7  claim against the Souzas.[8]  Finally, the court set dates for the completion of discovery

8  with a final pre-trial conference in July 2008.

9      **The Amended Third Party Complaint.**  Prior to the final pre-trial conference,

10  the Menezes filed a 65-page pre-trial statement.  The Menezes identified 13 witnesses to

11  be called at trial, including two experts to testify regarding the condition and value of

12  the Removed Cows.  The Menezes' pre-trial statement also contained an extensive

13  discussion of various personal injury and property damage claims against the Souzas

14  and Garcia based on tort theories of conversion, trespass to land and chattels, fraud, and

15  intentional infliction of emotional distress.  At the pre-trial conference, the court

16  questioned whether the fraud, personal injury, and property damage claims referenced in

17  the final pre-trial statement, as opposed to the indemnity claim (see footnote 6 infra),

18  had been properly pled in the TPC.  The court directed the Menezes to file a motion to

19  amend the TPC, which the Souzas and Garcia opposed.

20      After the hearing on the motion to amend, this court determined that the

21  Menezes' fraud, personal injury, and property damage claims had not been pled in

22  compliance with Federal Rule of Civil Procedure 8(a) (made applicable to this

23

24  _____

25  [7]See Exhibit A to Motion for Order Authorizing Employment of Special Counsel filed
   on August 9, 2007 (docket #132) and Exhibit A to the Dias Law Firm's Fee Application filed
26  on October 16, 2008 (docket #334).

27  [8]It is not clear why Robyn Souza was named as a defendant in either of the third-party
   complaints.  There is no evidence in the record to support a finding that Robyn Souza had any
28  involvement in the removal of cows from the J & L Dairy.

7

adversary proceeding by Federal Rule of Bankruptcy Procedure 7008). In November

2008, the court ruled that amendment of the complaint after the completion of discovery

and just prior to trial was not appropriate. The Menezes' motion to amend the TPC was

denied. The court did allow the Menezes to pursue their existing trespass and

conversion claims solely for the purpose of seeking "indemnity against Menezes'

liability to Land-O-Lakes, Inc., related costs and attorneys' fees (if appropriate)."[9]

**The Bifurcated Trial and Settlement of the Principal Case.** In July 2008, this

court issued a Pre-Trial Order and Notice of Trial on Bifurcated Issues. In that pre-trial

order, the court found that the Souza's claim of ownership of the Removed Cows

should be bifurcated and tried separately from the issues involving the dischargeability

of LOL's claim, the value of the Removed Cows, and the indemnity claims. The two-

day Bifurcated Trial began in October 2008. It was concluded in February 2009.

Following the Bifurcated Trial, this court ruled in March 2009 that the Menezes, and

not the Souzas, owned the Removed Cows. The court specifically declined to make any

ruling on the indemnity claims pled in the TPC. The questions of damages,

dischargeability, trespass, conversion, and the Menezes' complicity in the whole affair

were left for a further evidentiary hearing (the "Remaining Issues"). The court set a

trial on the Remaining Issues to begin in June 2009.

Prior to the scheduled trial on the Remaining Issues, the principal case was

settled pursuant to a confidential agreement between LOL and the Souzas. As part of

the settlement, the parties stipulated to dismiss the principal case against the Menezes

and LOL's third-party complaint against the Souzas. Based on the settlement, the

parties also stipulated to vacate the June 2009 trial date and requested a further status

conference on the Remaining Issues in the TPC.

The Menezes confirmed a chapter 12 plan in October 2007. Accordingly, based

on LOL's dismissal of the principal case, the Menezes will no longer have any liability

---

[9]Amended Order dated April 9, 2009, (docket #159).

8

to LOL once they complete their chapter 12 plan and receive a discharge. However, the Menezes have incurred a liability to the Dias Law Firm for attorney's fees and costs in excess of $150,000. The only unresolved Remaining Issue is the Menezes' right to recover those fees and costs from the Third-Party Defendants.

**The Motions for Judgment on Partial Findings.** After the principal case settled, another status conference was held on July 16, 2009. At the status conference, the Menezes asked the court to decide the Remaining Issues based on the evidence already in the record from the Bifurcated Trial.[10] All counsel acknowledged that the Menezes' claims were limited to recovery of their attorney's fees. Because the court only allowed testimony and evidence on limited issues in the Bifurcated Trial, the court originally suggested that the Remaining Issues could be tested by summary judgment pursuant to Fed.R.Civ.P. 56. However, all parties have requested judgment on partial findings of fact pursuant to Fed.R.Civ.P 52(c). They were given additional time to file their briefs and the matter was taken under submission. On December 7, 2009, this court requested supplemental briefing from the parties on the application of California's "tort of another" doctrine as codified in Cal.C.C.P. § 1021.6. (discussed below) The court also requested a citation to any evidence in the record regarding the Menezes' compliance with § 1021.6. Those briefs have now been filed.

**Analysis and Conclusions of Law.**

**Entry of Judgment After the Bifurcated Trial.** The Menezes have moved pursuant to Fed.R.Civ.P. 52(c) (made applicable to this adversary proceeding by Fed.R.Bankr.P. 7052 ("Rule 52(c)") for entry of a judgment in their favor based on the evidence presented during the Bifurcated Trial. Under Rule 52(c), the court may enter

---

[10]Counsel for the Menezes stated:

It's our position that we don't need any further testimony on the issues. We have three causes of action, trespass to land, trespass to chattels, and conversion, and we feel that the testimony that has already been provided up to this point is sufficient to prove those claims and we just – we request that we just submit further briefing on those issues and have the Court make a ruling on that. (Hr'g Tr. 5-6, July 16, 2009.)

1 judgment *against* a party, based on facts in the record after a nonjury trial, if the court

2 determines that the party (1) has been fully heard on the issues necessary to support its

3 claim or defense; and (2) cannot prevail as a matter of law on that claim or defense:

> **Judgment on Partial Findings.** If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

9 In ruling on a motion under Rule 52(c), the trial court is not required to draw any

10 inferences in favor of the non-moving party. The trial court may draw inferences and

11 make findings of fact in accordance with its own view of the evidence. *Ritchie v.*

12 *United States of America*, 451 F.3d 1019, 1023 (9th Cir. 2006). The trial court may rule

13 against the plaintiff in the middle of a non-jury trial if it determines that the plaintiff has

14 failed to carry his/her burden of proof. *Id.* at 1023-24.

15 Here, the Menezes ask the court to find that the Third-Party Defendants

16 trespassed on their property on the evening of January 30, 2007, and converted 212 of

17 their dairy cows. Notwithstanding the Souzas' settlement with LOL, and dismissal of

18 LOL's complaint against the Menezes, the Menezes contend that this tortious conduct

19 exposed them to liability to LOL and forced them to defend this adversary proceeding at

20 great expense. A favorable judgment on the tort/indemnity claims pled in the TPC is a

21 necessary predicate to the Menezes' effort to recover their attorney's fees from the

22 Third-Party Defendants.

23 The Third-Party Defendants oppose the Rule 52(c) motion because the issues

24 were limited in the Bifurcated Trial; it was conducted solely to determine who owned

25 the Removed Cows. They contend, *inter alia*, that the Removed Cows were taken with

26 the Menezes' consent as part of a prearranged agreement in preparation for the

27 Menezes' bankruptcy. The Third-Party Defendants argue that the Menezes have

28 effectively rested their case in chief and waived the right to a further trial by declining

1    to proceed to trial on the Remaining Issues as scheduled for June 2009. However, the

2    Third-Party Defendants correctly note that they are still entitled to present a defense on

3    the tort/indemnity issues should those issues need to be decided. Based on the evidence

4    in the record, the Third-Party Defendants contend that the Menezes are not entitled to

5    recover their attorney's fees as a matter of law, and they too have moved for judgment

6    on that issue under Rule 52(c).

7         The Third-Party Defendants have not been fully heard with regard to their

8    defense of the tort/indemnity claims so this court cannot enter a judgment on partial

9    findings for the Menezes under Rule 52(c). However, since the Menezes have been

10    fully heard and effectively rested their case in chief, the court can examine the record to

11    determine if judgment on partial findings in favor of the Third-Party Defendants is

12    appropriate. All parties have been fully heard and given an opportunity to submit

13    briefing and citations to the record relating to the application of Cal.C.C.P.

14    § 1021.6, which is discussed below.

15         **Recovery of Attorney's Fees in Bankruptcy.** There is no general right to

16    recover attorney fees under the Bankruptcy Code. *Ford v. Baroff (In re Baroff)*, 105

17    F.3d 439, 441 (9th Cir. 1997). However, "a prevailing party in a bankruptcy proceeding

18    may be entitled to an award of attorney fees in accordance with applicable state law if

19    state law governs the substantive issues raised in the proceedings." *Id.*, citing *Johnson*

20    *v. Righetti (In re Johnson)*, 756 F.2d 738, 741 (9th Cir. 1985). For example, the

21    prevailing party in an action on a contract may recover its attorneys fees if the contract

22    provides for such an award and state law authorizes it. *In re Johnson*, 756 F.2d at 741.

23    Here, the Menezes seek to recover the attorney's fees they incurred defending a

24    dischargeability complaint based on the tort of conversion. They assert a right to

25    recover those fees by way of indemnity claims based on tort theories. Because state law

26    controls the substantive tort and indemnity issues, the Menezes may only recover their

27    attorney's fees if state law so provides.

28    / / /

**The "American Rule."** Any discussion of attorney's fees must begin with the "American Rule." Under the American Rule, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, 549 U.S. 443, 448 (2007) (citations omitted). While the American Rule is the default rule, it can be overcome by statute. *Id.* It can also be overcome by an "enforceable contract" which provides for the recovery of attorney's fees. *Id.*

In California, the American Rule was codified in 1872 as Cal.C.C.P. § 1021 which currently states:

> Attorney's Fees a Matter of Agreement.
> Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided.

Here, the Menezes do not seek to recover any attorney's fees based on principals of contract law, and there is no evidence of a contractual indemnity agreement between the Menezes and the Souzas. Based on the American Rule, the court must therefore look to California's statutory and case law and determine if there is any other basis for awarding attorney's fees to the Menezes on the indemnity theories pled in the TPC.

**Recovery of Attorney's Fees as Tort Damages.** The Menezes contend that they are entitled to recover their attorney's fees as a measure of economic damages for conversion of the Removed Cows, citing Cal.Civ. Code § 3336.[11] The value of the Removed Cows is no longer relevant to the "damages" issue because the claims in the TPC were limited to indemnity for the Menezes' liability to LOL and "related costs and attorneys' fees (if appropriate)." LOL's claims against the Menezes have been settled and dismissed with no financial contribution from the Menezes.

In an effort to bring their claim within the scope of Cal.Civ.Code § 3336, the

---

[11]Cal.Civ. Code § 3336 states, in pertinent part, "The detriment caused by the wrongful conversion of personal property is presumed to be: First–The value of the property at the time of conversion . . . . Second–A fair compensation for *the time and money properly expended in pursuit of the property.*" (Emphasis added.)

12

1   Menezes argue that an award of their attorney's fees constitutes "a fair compensation

2   for the time and money properly expended in pursuit of the [Removed Cows]."

3   However, the record does not support a finding that the Menezes expended any time and

4   money in pursuit of, or trying to recover, the Removed Cows. As noted above, the

5   Menezes did essentially nothing about the Removed Cows for months after they were

6   transported from the dairy facility. (see footnote 4 infra.) They did not even file a

7   police report to formally document the incident until weeks after LOL commenced the

8   adversary proceeding. By that time the Menezes knew that the Removed Cows had

9   been sold by the Souzas and would not be returned. John Menezes protested to Alvin

10  Souza, but took no other action, in or out of the bankruptcy court, to recover the

11  Removed Cows or prevent their disposition.

12      The Menezes state that they have "expended more than $150,000 in attorneys'

13  fees and costs *in connection with the instant case*." (Emphasis added.)[12] However, the

14  legal fees they incurred "in connection with" defending LOL's dischargeability claims

15  for conversion of its collateral are not "costs incurred to pursue the property." The

16  Menezes cite no authority for such a proposition. Expenses incurred in preparation for

17  litigation of a conversion claim are not expended "in pursuit of the converted property"

18  and are not recoverable as an element of special damages under Cal.Civ. Code § 3336.

19  *Security-First Nat. Bank of Los Angeles v. Lutz*, 322 F.2d 348, 352 (9th Cir. 1963);

20  *Haines v. Parra*, 193 Cal.App.3d 1553, 1559 (1987). Accordingly, the Menezes are

21  not entitled to recover their attorney's fees as an element of damages under Cal.Civ.

22  Code § 3336.

23      The Menezes also contend that they are entitled to recover their attorney's fees as

24  an element of "financial damages" in their claims for trespass to land and chattels. Like

25  the conversion claim discussed above, the only Remaining Issue in the trespass claims is

26  based on indemnity, not economic damages. Unlike the conversion claim, the Menezes

27  offer no statutory authority for the proposition that attorney's fees are recoverable in a

28  trespass action, even as damages. Based on the "American Rule," and in the absence of

---

[12]Third-Party Plaintiffs John and Linda Menezes' Brief on Remaining Issues, 10: 15-17.

statutory authority, the Menezes are not entitled to recover their attorney's fees as an element of economic damages for the trespass claims.

Finally, the Menezes argue that they are entitled to recover their attorney's fees pursuant to Cal.Food & Agric. Code § 21855.[13] This argument fails for two reasons. First, as noted by the Third-Party Defendants, the Menezes never pled a claim for relief under the Cal.Food & Agric. Code. Second, the operative language in § 21855 (the "time and money properly expended by the plaintiff in pursuit of the cattle") is virtually identical to the operative language in Cal.Civ. Code § 3336 discussed above ("the time and money properly expended in pursuit of the property"). At risk of belaboring the point, there is no evidence in the record to suggest that the Menezes expended any "time and money in pursuit of the cattle." Accordingly, they are not entitled to recover their attorney's fees under the Cal.Food & Agric. Code.

**Implied Indemnity and the "Tort of Another" Doctrine.** The Menezes seek "indemnity" for their attorney's fees based on the tort theories pled in the TPC. Under California law there are three basic forms of indemnity; express indemnity provided for by contract, implied contractual indemnity arising from a contract that did not expressly provide for indemnity, and implied indemnity arising from the equities of particular circumstances (often referred to as "equitable indemnity"). *Prince v. Pacific Gas & Elec. Co.* 45 Cal.4th 1151, 1157 (2009). Under the principal of express indemnity, a duty to indemnify arises pursuant to an express contract or agreement to indemnify. Equitable defenses are not applicable and liability or fault is not an element of express

---

[13]Cal.Food & Agric. Code § 21855 states in pertinent part:

> Notwithstanding any other provision of law, in any action for the wrongful taking, possessing, harboring, or transporting of cattle, for the driving of cattle off their usual range, or for the killing or slaughter of cattle without the consent of the owner or the person lawfully in possession of such cattle, the detriment caused thereby to the plaintiff shall be four times the value of the cattle at the time of the taking, possession, harboring, transporting, or driving, or killing or slaughtering thereof, with interest from that time, plus an amount in fair compensation *for the time and money properly expended by the plaintiff in pursuit of the cattle*. (Emphasis added.)

14

1  indemnity. Conversely, under the implied indemnity doctrines, the duty arises because

2  one party is responsible for another party's loss. Implied indemnity may arise as a result

3  of a contractual relationship or general equitable considerations. *Id.* at 1163 (citations

4  omitted).

5       Here, neither party has argued nor presented evidence to show that there was an

6  express agreement for indemnification between the Menezes and the Souzas.

7  Therefore, the Menezes' claims are based on traditional equitable indemnity. In other

8  words, the Menezes contend that they have incurred damages measured by the amount

9  of the attorney's fees expended in defending LOL's dischargeability claims and that the

10 Third-Party Defendants are responsible for that damage. This type of claim has been

11 accepted by the California courts as falling under the "tort of another" doctrine. The

12 "tort of another" doctrine has been codified under California law in Cal.C.C.P.

13 § 1021.6[14] and it is recognized as an exception to the "American Rule." *Wilson, McCall*

14 *& Daoro v. American Qualified Plans, Inc.*, 70 Cal.App.4th 1030, 1035 (1999).

15       The seminal California case establishing the common-law "tort of another"

16 doctrine is *Prentice v. North American Title Guaranty Corp.*, 59 Cal.2d 618, 620

17 (1963). The *Prentice* court first acknowledged the American Rule as codified in

18 Cal.C.C.P. § 1021 and then held that the American Rule only applied in a two-party

19 lawsuit. *Id.* at 621. The *Prentice* decision carved out a common-law exception to the

20 American Rule and held that the American Rule did not apply, "where a defendant has

21

22       [14]Cal.C.C.P. § 1021.6 states:

23

24       Upon motion, a court after reviewing the evidence in the principal case may
         award attorney's fees to a person who prevails on *a claim for implied indemnity*

25       if the court finds (a) that the indemnitee through the tort of the indemnitor has
         been required to act in the protection of the indemnitee's interest by bringing an

26       action against or defending an action by a third personal and (b) *if that*
         *indemnitor was properly notified of the demand to bring the action or provide*

27       *the defense and did not avail itself of the opportunity to do so*, and (c) that the
         trier of fact determined that the indemnitee was without fault in the principal

28       case which is the basis for the action in indemnity or that the indemnitee had a
         final judgment entered in his or her favor granting a summary judgment, a
         nonsuit, or a directed verdict. (emphasis added.)

15

1    wrongfully made it necessary for a plaintiff to sue a third person." *Id.* at 621. The "tort

2    of another" doctrine was stated in *Prentice* as follows:

> A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred. *Id.* at 620.

6        The common-law "tort of another" doctrine came under fire when the California

7    Supreme Court decided *Davis v. Air Technical Indus., Inc.,* 22 Cal.3d 1 (1978). In

8    *Davis,* a retailer and elevator manufacturer were both sued for damages caused by a

9    defective elevator. The manufacturer refused to defend the retailer and the retailer

10   cross-complained against the manufacturer for indemnification. The retailer prevailed

11   on the negligence claim; however, the plaintiff prevailed against both the retailer and

12   the manufacturer on a theory of strict liability. The court found that the retailer was

13   entitled to indemnification from the manufacturer on the damage claim. The trial court

14   also ruled that the retailer was entitled to recover its attorneys' fees. On appeal, the

15   Supreme Court reversed the attorneys' fee award. Looking to Cal.C.C.P. § 1021 ("The

16   American Rule"), the majority concluded that the *Prentice* common-law exception to

17   § 1021 "would not apply in cases where the indemnitee incurred attorney's fees solely

18   in defense of his own alleged wrong doing." *Id.* at 5.

19       Justice Mosk dissented. He argued that the retailer should be entitled to

20   attorney's fees as part of the indemnification award, in that the retailer "did not

21   gratuitously undertake a defense and incur obligations for attorney's fees; he requested

22   Air Technical to defend him and it declined to do so." *Id.* at 9. Urging the court to

23   follow its own decision in *Prentice,* and apply the "tort of another" doctrine to these

24   facts, Justice Mosk wrote that the elevator manufacturer "was alone responsible for the

25   accident and thus it should have undertaken the entire defense." *Id.* In 1979, one year

26   after the *Davis* decision, the California legislature enacted Cal.C.C.P. § 1021.6 which

27   codified the "tort of another" doctrine.[15] Section 1021.6 was enacted in direct response

28   to the California Supreme Court's decision in *Davis. John Hancock Mutual Life Ins Co.*

---

[15]Cal.C.C.P. § 1021.6 is sometimes referred to as the "California Rule."

*v. Setser*,  42 Cal.App.4th 1524, 1533 (1996).

Since the enactment of Cal.C.C.P. § 1021.6, the courts have split over its application. *Burger v. Kuimelis*, 325 F.Supp.2d 1026, 1041 (N.D. Cal 2004).  One line of cases holds that § 1021.6 governs all claims for attorney fees and expenses under the "tort of another" doctrine.  *Id.*, citing *Unocal Corp. v. United States*, 222 F.3d 528, 543 (9th Cir. 2000).  The other line of cases still recognizes the common-law *Prentice* doctrine.  *Id.*, citing *Sooy v. Peter*, 220 Cal.App.3d 1305, 1310 (1990).  Those cases reject the idea that the common-law doctrine is an exception to the American Rule. They treat attorney's fees incurred in prosecuting or defending a third-party tort action as a traditional element of damages.  *Sooy*, 220 Cal.App.3d at 1312 (citing *Brandt v. Superior Court*, 37 Cal.3d 813, 817-18 (1985)).[16]

Cal.C.C.P. § 1021.6 imposes four requirements for the recovery of attorney's fees under an "implied indemnity" theory:

> (1) the indemnitee (Menezes here), must have prevailed on a claim for implied indemnity;
>
> (2) a tort must have been committed by the indemnitor (here, the Third-Party Defendants) that involved the indemnitee in third party litigation (here, the principal case with LOL);
>
> (3) the indemnitor must have been "notified of the demand to bring the action or provide the defense" during the third party litigation and refused to do so; and
>
> (4) the indemnitee must prevail entirely in the "principal case."

*Burger*, 325 F.Supp.2d at 1042.

The *Burger* court clarified three important differences between the common-law "tort of another" doctrine defined by *Prentice* and the doctrine as codified in

---

[16]In *Sooy*, the issue involved an attorney's duty of care to a third party.  After a non-judicial foreclosure of property, the junior lienholders sued the senior lienholder and its attorney, Sooy for, *inter alia*, negligent misrepresentation and fraud.  In return, Sooy cross-complained against the plaintiff's attorney alleging that he negligently failed to protect the interests of his clients.  Sooy claimed that his costs in defending the principal case were attributable to a "third party tort"– professional negligence by the plaintiff's attorney.  The court of appeal sustained a dismissal of the cross-complaint by demurrer.  The decision turned on the scope of the plaintiff's attorney's duty to Sooy.  There was no mention of Cal.C.C.P § 1021.6 in the court's opinion.

1 § 1021.6. First, the *Burger* court wrote, § 1021.6 applies only in implied indemnity

2 cases, as opposed to cases based on express or contractual indemnity. Second, the

3 common-law doctrine does not have a "notice and demand" requirement. Third, under

4 the common-law doctrine, attorney's fees are awarded by the trier of fact as a measure

5 of damages. Under Cal.C.C.P. § 1021.6, attorney's fees are awarded separately by the

6 court, upon motion of the prevailing party, in addition to any damages that may be

7 awarded by the trier of fact. *Id.*

8 **Application of Cal.C.C.P. § 1021.6.** It is important to note that Cal.C.C.P.

9 § 1021.6 does not create an independent substantive right to indemnification.

10 "[S]ection 1021.6 does not on its face create a right to indemnity. It merely 'permits an

11 indemnitee to recover . . . attorney fees in an implied indemnity action under specified

12 circumstances.'" *John Hancock*, 42 Cal.App.4th at 1531. A foundational right to

13 implied indemnity must be pled and proven separate and apart from § 1021.6. *Id.*

14 "Section 1021.6 does not establish the criteria for an implied indemnity. It presupposes

15 the existence of 'a claim for implied indemnity' on which the party seeking attorney's

16 fees has prevailed." *Watson v. Department of Transportation*, 68 Cal.App.4th 885, 890

17 (1998).

18 Turning now to the facts of this case, the Menezes are seeking to recover their

19 attorney's fees on an "implied indemnity" theory since they have no contractual right to

20 indemnity. For purposes of this analysis, the court can assume, without finding, that the

21 first, second and fourth elements of the statutory "tort of another" doctrine as outlined in

22 the *Burger* decision have been, or would be satisfied were this to proceed through a

23 trial. Hypothetically, the Menezes "prevailed" in the principal case because the

24 principal case was dismissed by LOL without any judgment being entered against the

25 Menezes. The court can also assume hypothetically, without finding that the Third-

26 Party Defendants engaged in tortious conduct, the conversion of LOL's collateral,

27 because the Menezes prevailed on the "ownership" issue in the Bifurcated Trial. The

28 critical issue then for purposes of this proceeding is the third *Burger* element, the two-

18

1  part requirement that the Menezes gave the Third-Party

2  Defendants notice of the demand to provide a defense and the Third-Party Defendants

3  refused to do so.

4       To qualify for an award of attorney's fees under Cal.C.C.P. § 1021.6, the

5  Menezes had to, *inter alia*, properly notify the Third-Party Defendants of their demand

6  to defend the civil action filed by LOL, and the Third-Party Defendants had to reject

7  that demand. *Uniroyal Chemical Co. v. American Vanguard Corp.*, 203 Cal.App.3d

8  285, 289 (1988). There is no evidence in the record to suggest that the Menezes gave

9  any such notice to the Third-Party Defendants. By the time the Menezes filed and

10  served the TPC, they had already responded to LOL's complaint.

11       The Menezes concede that Cal.C.C.P. § 1021.6 applies to their indemnity claim

12  and contend that service of the TPC itself satisfied the "notice and demand"

13  requirement. Several California courts in various unpublished decisions have addressed

14  the "notice and demand" requirement of § 1021.6. Although those decisions cannot be

15  cited for precedential authority, they can be considered for their analytical and

16  persuasive value. Those cases clarify that the "notice and demand" must be timely,

17  clear and specific. For example, in *Giannoni v. Highfill,* No. C037439, 2001 WL

18  1283703, at *4, (Cal.Ct.App. October 24, 2001), the court held that an "oblique threat to

19  seek attorney fees in conjunction with a motion for summary judgment does not

20  constitute proper notice of a claim for indemnity" under Cal.C.C.P. § 1021.6.

21       The "notice and demand" issue was examined in *KPI Ultrasound, Inc. v. 3 Day*

22  *Blinds, Inc.*, No. E038652, 2006 WL 1217056, at *4 (Cal.Ct.App. May 5, 2006). After

23  the trial court ruled orally in favor of *KPI* on a motion for summary judgment, *KPI* sent

24  a demand letter to the cross-defendant for reimbursement of its attorney's fees. The

25  court found that the demand letter was "clearly untimely." "The point of requiring a

26  demand and tender of defense is to avoid the necessity of the indemnitee's incurrence of

27  its own attorney fees for a separate defense. It is only when such a demand has been

28  made and refused that the claim for indemnity of the attorney fees can arise." *Id.*

19

1   (citation omitted).

2       The court also labeled as "untenable" *KPI's* argument that its cross-complaint

3   constituted a proper demand and tender of defense. "The cross-complaint is a pleading

4   alleging the existence of a cause of action. In other words, it asserts the basis of liability

5   for indemnity. The pleading here did not, in its import, tender defense of the main action

6   to [the cross-defendant]. Rather, it pleaded or attempted to plead a basis for indemnity

7   liability, assuming that KPI's underlying tort liability was established in the main

8   action." *Id.*

9       The court, in *Salyer v. 396 Inv. Co.,* No. G035347, 2005 WL 1155923,

10  (Cal.Ct.Appp. May 17,  2005), addressed the degree of specificity for the § 1021.6

11  "notice and demand" requirement at length. *In Salyer*, a leaking reservoir, owned by

12  the City of Anaheim, caused a landslide resulting in numerous lawsuits against a land

13  developer, 396 Inv. Company ("396"). When 396 learned through discovery of

14  Anaheim's involvement with the reservoir, it filed two formal claims with Anaheim

15  pursuant to the Tort Claims Act.[17]  Anaheim was ultimately held to be 100 percent liable

16  for the landslide and 396 sought to recover its attorney's fees under Cal.C.C.P.

17  § 1021.6. It argued that the claims it filed against Anaheim in compliance with the Tort

18  Claims Act satisfied the "notice and demand" requirement of § 1021.6. The court of

19  appeals disagreed. Both of 396's claims described the general nature of the litigation

20  and stated: "Claimant seeks indemnity, contribution, and apportionment to the extent

21  that plaintiffs prevail in their respective actions."  The court held that the claims did not

22  satisfy the "notice and demand" requirement because nothing in the claims constituted a

23  demand that Anaheim defend 396 in the principal case. *Id.* at *89.

24          As stated in *Uniroyal Chemical Co. v. American Vanguard Corp.*
            (1988) 203 Cal.App.3d 285, 289, before a court can make an award under
25          Code of Civil Procedure section 1021.6, it must find that the proposed
            indemnitor was notified of the demand to provide a defense and failed to
26          provide such defense. There is a difference between a demand for
            indemnity, contribution and apportionment and a demand for a defense.

27

28  ────────────────

        [17]396 was required to file formal claims against Anaheim pursuant to the Government
    Tort Claims Act. (Cal.Gov.Code § 900 et seq.) Pursuant to Cal.Gov.Code § 911.2, that claim
    had to be filed within one year after accrual of 396's cause of action against Anaheim.

                                          20

396 has not cited any portion of the record showing that it made a demand that Anaheim provide it with a defense. Thus, the record does not support the implied finding that 396 tendered the defense of the litigation to Anaheim and the court erred in awarding 396 attorney fees under section 1021.6.

*Id.*

Turning now to the instant case, there is nothing in the language of the TPC that could be construed as a demand for defense of the complaint filed by LOL. (see footnote 6 supra.)  There is nothing in the record to suggest that the Third-Party Defendants received any notice of LOL's complaint before the TPC was filed, or that the Menezes made a separate formal demand for defense of the complaint before filing their answer with the TPC.  The Third-Party Defendants never had an opportunity to refuse a demand to defend the Menezes.  The Menezes had already hired legal counsel for their defense and answered LOL's complaint before filing and serving the TPC.

### Application of the Common-Law Doctrine.

Looking beyond Cal.C.C.P. § 1021.6 for alternative relief, the Menezes argue in their supplemental brief that they are entitled to compensation for their attorneys' fees, not as attorney's fees *per se*, but as damages caused by the "wrongful taking of the removed cattle and trespass on the Menezes' property" citing the holding in *Prentice*, 59 Cal.2d 618 (1963).  The *Prentice* case established the "tort of another" doctrine as a common-law exception to the American Rule.  The *Prentice* case was decided in 1962. It was subsequently rejected, or significantly limited in its application by the *Davis* decision which led to the enactment of Cal.C.C.P. § 1021.6 in 1979.  The Menezes cite no authority for the proposition that the common-law doctrine as stated in *Prentice* is still applicable to "implied indemnity" claims.  However, as noted above, some California courts still recognize a common-law doctrine not as an exception to the American Rule, but as a basis for recovering traditional tort damages.  To the extent that the *Prentice* doctrine still has any relevance today, it is only applicable to "exceptional circumstances." *Davis*, 22 Cal.3d at 7.

///

[T]he *Prentice* exception was not meant to apply in every case in which one party's wrongdoing causes another to be involved in litigation with a third party. If applied so broadly, the judicial exception would eventually swallow the legislative rule that each party must pay for its own attorney. To avoid this result, *Prentice* limits its authorization of fee shifting to cases involving 'exceptional circumstances.' Far from involving 'exceptional circumstances,' the present case is a products liability action of the garden variety. *Id.* (Footnote and citations omitted.)

This case involves "garden variety" conversion and trespass claims. The Menezes' request for attorney's fees as "tort damages" fails for several reasons. First, in November 2008, this court denied the Menezes' request to add direct tort/damage claims to the TPC. The only Remaining Issue in the TPC is the Menezes' right to recover their attorney's fees by way of implied indemnity for having to defend LOL's dischargeability claims. Second, as discussed above, attorney's fees are not recoverable on these facts through a direct conversion or trespass claim. Third, as discussed above, the Menezes have rested their case in chief and requested judgment on the tort claims under Rule 52(c). However, this court cannot make a finding under Rule 52(c) in favor of the Menezes because the Third-Party Defendants were not fully heard on the tort claims in the Bifurcated Trial. Many of the "tort" issues were left unresolved; specifically, the issue of whether the Menezes consented to let Alvin Souza take the Removed Cows. The Menezes did not prove by a preponderance of the evidence in the Bifurcated Trial that removal of the Cows was a tortious act against the Menezes. Finally, based on the facts that are in the record, the court is not persuaded that this case involves "exceptional circumstances" sufficient to invoke any common-law exception to the American Rule.

**Conclusion.**

Based on the foregoing, the court finds and concludes that the Menezes are not entitled to recover their attorney's fees as damages for conversion under Cal.Civ. Code § 3336. Neither are they entitled to recover their attorney's fees as damages for trespass and violation of California's Food & Agric. Code. The Menezes' right to recover attorney's fees in defense of this adversary proceeding is governed by California's "tort

22

of another" doctrine codified in Cal.C.C..P. § 1021.6. The "tort of another" doctrine has four elements, each of which must be satisfied. The Menezes offered no evidence to show that they satisfied the critical "notice and demand" requirement of § 1021.6. Accordingly, the Menezes are not entitled to recover their attorney's fees from the Third-Party Defendants as a matter of law. The Menezes have been fully heard on this issue and judgment for the Third-Party Defendants is proper under Rule 52(c).

Accordingly, Menezes' motion for judgment on partial findings shall be denied. The Third-Party Defendants' motion shall be granted and the third-party complaint shall be dismissed as to all Third-Party Defendants. All parties shall bear their own costs. This ruling is without prejudice to the Dias Law Firm's right to assert an administrative claim in this chapter 12 proceeding for payment of its "reasonable and necessary" attorney's fees through the chapter 12 plan subject to 11 U.S.C. § 330.[18]

Dated: February  /9  , 2010

W. Richard Lee
United States Bankruptcy Judge

---

[18]The Menezes will have to amend their chapter 12 plan to provide additional funding for a substantial administrative claim.

23